1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  THOMAS S. PATTERSON
   Supervising Deputy Attorney General
5  TRACE O. MAIORINO, State Bar No. 179749
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5975
    Fax:  (415) 703-5843
8   Email:  Trace.Maiorino@doj.ca.gov

9  Attorneys for Defendants Lemon, Ayers, Tilton, Ebert,
   Ortiz, Plymesser, Robinson, Ratliff, and Grannis

10

11

              IN THE UNITED STATES DISTRICT COURT
12
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
13
                      SAN JOSE DIVISION
14

15  | **GREGORY TABAREZ,** | C 07-4920 JF (PR) |

16                                    Plaintiff,     **DEFENDANTS' NOTICE OF
                                                     MOTION AND MOTION FOR
17            v.                                      SUMMARY JUDGMENT;
                                                     MOTION TO DISMISS;
18  **JAMES TILTON, et al.,**                         SUPPORTING
                                                     MEMORANDUM OF POINTS
19                                    Defendants.     AND AUTHORITIES**

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2                                                                                          **Page**

3   INTRODUCTION                                                                             2

4   STATEMENT OF THE ISSUES                                                                  2

5   STATEMENT OF THE CASE                                                                    3

6   STATEMENT OF FACTS                                                                       3

7   ARGUMENT                                                                                 5

8       I.     LEGAL STANDARD.                                                               5

9              A.    Summary Judgment.                                                       5

10             B.    Motion to Dismiss.                                                      5

11      II.    THERE IS INSUFFICIENT EVIDENCE THAT DEFENDANTS
               VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS.                                   6

12
               A.    There is No Evidence that Defendants Wrongfully Retaliated Against
13                   Plaintiff for Exercising His First Amendment Rights.                    6

14             B.    Plaintiff May Not Sustain Claims Against Defendants Tilton, Ayers,
                     Grannis, Ortiz, Ebert, Plymesser, Robinson, or Ratliff Because He Has
15                   Failed to Show That They Were Directly Involved in His Alleged
                     Deprivation.                                                            8

16
        III.   Defendants Tilton, Ayers, Grannis, and Ortiz May Not Be Held Liable for
17             Denying Plaintiff's Grievances Because Inmates Do Not Have a
               Constitutional Right to the Administrative-Appeals Process.                   9

18
        IV.    Even If the Court Were to Find a Constitutional Violation, Defendants
19             Are Entitled to Qualified Immunity Because a Reasonable Officer Could
               Have Believed that Defendants' Conduct Was Lawful.                            11

20
    CONCLUSION                                                                               12
21

22

23

24

25

26

27

28

Defs.' Mot. Summ. J. & Mot. Dismiss; Supp'g Mem. P. & A.                    *G. Tabarez v. J. Tilton, et al.*
                                                                            C 07-4920 JF (PR)

i

1

**TABLE OF AUTHORITIES**

2                                                                                    Page

3 | **Cases**

4 | *Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986)                                                               5
5
    *Baker v. McCollan*
6 | 443 U.S. 137 (1979)                                                                9

7 | *Barnett v. Centoni*
    31 F.3d 813 (9th Cir. 1994)                                                        6
8
    *Buckley v. Barlow*
9 | 997 F.2d 494 (8th Cir. 1993)                                                       9

10 | *Celotex Corp. v. Catrett*
     477 U.S. 317 (1986)                                                              5
11
     *Hansen v. Black*
12 | 885 F. 2d 642 (9th Cir. 1978)                                                     8

13 | *Harlow v. Fitzgerald*
     457 U.S. 800 (1982)                                                             11
14
     *Hunter v. Bryant*
15 | 502 U.S. 224 (1991)                                                             11

16 | *Ivey v. Bd. of Regents of the Univ. of Alaska*
     673 F. 2d 266 (9th Cir. 1982)                                                   8
17
     *Jeffers v. Gomez*
18 | 267 F.3d 895 (9th Cir. 2001)                                                    11

19 | *Leer v. Murphy*
     844 F. 2d 628 (9th Cir. 1988)                                                   8
20
     *Montanye v. Haymes*
21 | 427 U.S. 236 (1976)                                                             12

22 | *Navarro v. Block*
     250 F.3d 729 (9th Cir. 2001)                                                    5
23
     *Pratt v. Rowland*
24 | 65 F.3d 802 (9th Cir. 1995)                                                      6

25 | *Ramirez v. Galaza*
     334 F.3d 850 (9th Cir. 2003)                                                    9
26
     *Rhodes v. Robinson*
27 | 408 F.3d 559 (9th Cir. 2005)                                                     6

28

Defs.' Mot. Summ. J. & Mot. Dismiss; Supp'g Mem. P. & A.                *G. Tabarez v. J. Tilton, et al.*
                                                                         C 07-4920 JF (PR)

                                            ii

## TABLE OF AUTHORITIES  (continued)

**Page**

*Saucier v. Katz*
533 U.S. 194 (2001)                                                                    11

*Schroeder v. McDonald*
55 F.3d 454 (9th Cir. 1995)                                                            12

**Constitutional Provisions**

United States Constitution
        First Amendment                                                                3, 6

**Statutes**

United States Code, Title 42
        § 1983                                                                         2, 3, 6

**Court Rules**

Federal Rule of Civil Procedure
        rule 12(b)(6)                                                                  1, 5, 9, 10
        rule 56                                                                        1
        rule 56(c)                                                                     5
        rule 56(e)                                                                     5

**Other Authorities**

California Code Regulations, Title 15
        § 3377                                                                         4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defs.' Mot. Summ. J. & Mot. Dismiss; Supp'g Mem. P. & A.                     *G. Tabarez v. J. Tilton, et al.*
                                                                             C 07-4920 JF (PR)

iii

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  THOMAS S. PATTERSON
   Supervising Deputy Attorney General
5  TRACE O. MAIORINO, State Bar No. 179749
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5975
    Fax:  (415) 703-5843
8   Email:  Trace.Maiorino@doj.ca.gov

9  Attorneys for Defendants Lemon, Ayers, Tilton, Ebert,
   Ortiz, Plymesser, Robinson, Ratliff, and Grannis
10

11                IN THE UNITED STATES DISTRICT COURT

12             FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                         SAN JOSE DIVISION

14

15  **GREGORY TABAREZ,**                      C 07-4920 JF (PR)

16                           Plaintiff,      **DEFENDANTS' NOTICE OF
                                             MOTION AND MOTION FOR**
17          v.                               **SUMMARY JUDGMENT;
                                             MOTION TO DISMISS;**
18  **JAMES TILTON, et al.,**                **SUPPORTING
                                             MEMORANDUM OF POINTS**
19                          Defendants.      **AND AUTHORITIES**

20

21       TO PLAINTIFF GREGORY TABAREZ, IN PRO SE:

22       PLEASE TAKE NOTICE that under Federal Rule of Civil Procedure 56, Defendants

23  Lemon, Ayers, Tilton, Ebert, Ortiz, Plymesser, Robinson, Ratliff, and Grannis (Defendants)

24  move for summary judgment because there is no genuine issue of material fact and they are

25  entitled to judgment as a matter of law.  In addition, Defendants Tilton, Grannis, Ayers, and Ortiz

26  move for dismissal under Federal Rule of Civil Procedure 12(b)(6) because there is no

27  constitutional right to an administrative-appeals process.  These motions are based on the

28  memorandum of points and authorities, the supporting declarations, and the pleadings and

1  records on file in this case.

2  **INTRODUCTION**

3       The officials are entitled to summary judgment because Plaintiff does nothing more than

4  challenge a legitimate, precautionary measures taken by conscientious correctional staff.

5  Specifically, prison officials transferred Plaintiff from one prison to another to ensure that

6  correctional staff had no bearing on Plaintiff's lawsuit against Defendant Lemon and to prevent

7  any possible allegation that officials' actions concerning him were somehow retaliatory. In an

8  unrelated lawsuit, Plaintiff sued Defendant Lemon concerning a 2002 incident at Folsom State

9  Prison. Following the 2002 incident, Plaintiff was transferred to California State Prison - San

10  Quentin (San Quentin). In 2006, Defendant Lemon was promoted to Chief Deputy Warden at

11  San Quentin. Soon after, a request was made to transfer Plaintiff from San Quentin as a means to

12  protect Plaintiff, maintain the security of the institution, and avoid any negative consequences the

13  lawsuit may have on Plaintiff, other inmates, or correctional staff. Despite Plaintiff's

14  contentions, this transfer did not violate his constitutional rights because it served a legitimate

15  penological purpose. Consequently, Defendants are entitled to summary judgment.

16  **STATEMENT OF THE ISSUES**

17       1.    To prevail on a claim under 42 U.S.C. § 1983 for retaliation, Plaintiff must

18  establish that he was retaliated against for exercising a constitutional right, and that the

19  retaliatory action was not related to a legitimate penological purpose. May Plaintiff hold

20  Defendants liable for retaliation when he was transferred to ensure that Defendant Lemon's role

21  as the Chief Deputy Warden had no bearing on Plaintiff's lawsuit against him and to prevent any

22  possible allegation of perceived retaliation?

23       2.    To state a claim for a constitutional violation, a plaintiff must set forth facts

24  connecting each defendant to the loss the plaintiff claims to have suffered. May Plaintiff hold

25  Defendants Tilton, Ayers, Grannis, Ortiz, Ebert, Plymesser, Robinson, or Ratliff liable for claims

26  of retaliation without showing that each defendant acted personally against him?

27       3.    Qualified immunity protects officials from damages suits as long as their actions

28  did not violate clearly established federal rights. Could a reasonable official have believed that

Defs.' Mot. Summ. J. & Mot. Dismiss; Supp'g Mem. P. & A.        *G. Tabarez v. J. Tilton, et al.*
*C 07-4920 JF (PR)*

1  Defendants' conduct was lawful, thus entitling them to qualified immunity?

2      4.    Inmates do not have a constitutional right to file prisoner administrative appeals or

3  inmate grievances. May Plaintiff hold Defendants Tilton, Grannis, Ayers, and Ortiz liable for

4  denying his inmate appeals?

### STATEMENT OF THE CASE

6      On September 21, 2007, Plaintiff, a California state prisoner, filed his complaint pro se

7  under 42 U.S.C. § 1983 against prison officials at San Quentin and against officials at the

8  California Training Facility (CTF). In his complaint, Plaintiff alleges that Defendants violated

9  his rights under the First Amendment because he was transferred from San Quentin to CTF.

10  (Compl.)

11      At the time of the allegations in the complaint, Defendant Tilton was the Secretary of

12  CDCR, Defendant Ayers was the Warden at San Quentin, and Defendant Lemon served as the

13  Chief Deputy Warden at San Quentin. In addition, Defendant Ebert served as a Correctional

14  Counselor I who sat on the Unit Classification Committee (UCC) that referred Plaintiff for a

15  transfer to CTF. Once at CTF, Defendants Plymesser, Robinson, and Ratliff sat on another UCC,

16  and Defendant Ortiz reviewed an administrative appeal submitted by Plaintiff. Finally,

17  Defendant Grannis served as the Director of the Inmate Appeals Branch that denied Plaintiff's

18  inmate appeals.

19      The Court found that Plaintiff had stated a cognizable claim of retaliation against these

20  Defendants and allowed Plaintiff to proceed with his § 1983. (Order of Service at 2.) The Court

21  directed Defendants to file a dispositive motion no later than June 5, 2008. (Id.)

22

### STATEMENT OF FACTS

23

24      1.    Plaintiff is a state prisoner, who appeared before a UCC at San Quentin on

December 4, 2006. (Decl. Maiorino Ex. A, AGO-149.) The committee referred Plaintiff to the
25
Classification Staff Representative for referral to another prison. (Id.) This referral for a transfer
26
was because Plaintiff named San Quentin's Chief Deputy Warden M. Lemon as a defendant.
27
The request was "to ensure that [Defendant Lemon's] role as the [chief deputy warden] has no
28

Defs.' Mot. Summ. J. & Mot. Dismiss; Supp'g Mem. P. & A.      G. Tabarez v. J. Tilton, et al.
C 07-4920 JF (PR)

3

1   bearing on the case and [to prevent] any possible allegation of perceived retaliation of any nature

2   by [Plaintiff]." (*Id.*)

3        2.        During the classification committee hearing, Plaintiff stated that he opposed the

4   transfer from San Quentin, but requested that if he was to be transferred, that it be to California

5   State Prison-Solano or Correctional Training Facility (CTF), because they were near his family.

6   (*Id.*) Defendant Ebert served as a committee member. (*Id.*) Later that same day, Plaintiff was

7   approved by the Classification Staff Representative to be transferred from San Quentin to CTF, a

8   Level II institution. (Decl. Maiorino Ex. A, AGO-150.)

9        3.        Plaintiff was transferred to CTF and appeared before another UCC on December

10  20, 2006 for an initial hearing following his transfer from San Quentin. (Pl.'s Compl. Ex. A at

11  15.) Although a UCC is typically chaired by the facility captain, he was not present and

12  Defendant Plymesser chaired the UCC instead. (Decl. Plymesser ¶ 3.) Along with Defendant

13  Plymesser, Defendants Robinson and Ratliff served on the UCC. (*Id.*)

14       4.        As a recent transfer to CTF, Plaintiff appeared before the UCC to ensure that he

15  was properly transferred to CTF from San Quentin, that he was properly housed at CTF's North

16  Facility, that he was placed in the appropriate work-group and privilege-group, and to ensure that

17  he was placed on the waiting list for an appropriate program at CTF. (*Id.* ¶ 4.)

18       5.        CTF is a multi-level facility and may house Level I, II, or III inmates. (*Id.* ¶ 7.)

19  Inmates are classified from Level I to Level IV, depending on their need for security, with

20  LEVEL I being a lower level of security and Level IV being a higher level of security. Cal. Code

21  Regs., tit. 15, § 3377. The classification score of an inmate determines which custody level the

22  inmate requires. (Decl. Plymesser ¶ 7.) On December 20, 2006, Plaintiff's classification score

23  was nineteen, making him a Level II inmate. (*Id.*) At CTF, Plaintiff was housed at CTF-North

24  Facility (CTF-North). (*Id.* ¶ 8.) At the time, CTF-North housed Level I, II, and III inmates and a

25  majority of the inmates housed in CTF-North were Level II inmates. (*Id.*)

26  / / /

27  / / /

28  / / /

Defs.' Mot. Summ. J. & Mot. Dismiss; Supp'g Mem. P. & A.                *G. Tabarez v. J. Tilton, et al.*
                                                                        C 07-4920 JF (PR)

4

1

## ARGUMENT

2    **I.    LEGAL STANDARD.**

3        **A.    Summary Judgment.**

4        Summary judgment is appropriate where the pleadings, discovery, and affidavits show

5    that "there is no genuine issue as to any material fact and that the moving party is entitled to

6    judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those that may affect the

7    outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute

8    concerning a material fact is genuine if there is sufficient evidence for a reasonable jury to return

9    a verdict for the nonmoving party. *Id.* at 249.  Entry of summary judgment is mandated when the

10   responding party "fails to make a showing sufficient to establish the existence of an element

11   essential to that party's case, and on which that party will bear the burden of proof at trial."

12   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the moving party will have the burden

13   of proof on an issue at trial, he must affirmatively demonstrate that no reasonable trier of fact

14   could find other than for the moving party. *Id.* at 322-23.

15       However, on an issue for which his opponent will have the burden of proof at trial, the

16   moving party can prevail merely by pointing out to the court that there is an absence of evidence

17   to support the nonmoving party's case. *Id.* at 325.  If the moving party meets its initial burden,

18   the opposing party must then set forth specific facts showing that there is a genuine issue for trial

19   to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250.  If the nonmoving party

20   fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*

21   *Corp.*, 477 U.S. at 323.

22       **B.    Motion to Dismiss.**

23       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

24   sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the

25   Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Navarro*

26   *v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

27   / / /

28   / / /

Defs.' Mot. Summ. J. & Mot. Dismiss; Supp'g Mem. P. & A.                    *G. Tabarez v. J. Tilton, et al.*
                                                                             C 07-4920 JF (PR)

1    II.    **THERE IS INSUFFICIENT EVIDENCE THAT DEFENDANTS VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS.**

2

3    A.    **There is No Evidence that Defendants Wrongfully Retaliated Against Plaintiff for Exercising His First Amendment Rights.**

4    Plaintiff has alleged that Defendants retaliated against him for exercising his First

5    Amendment rights.  Plaintiff contends that he was wrongfully transferred because of a lawsuit

6    filed against Defendant Lemon related to a 2002 incident at Folsom State Prison. (Pl.'s Compl.)

7    But, as detailed below, Plaintiff was properly transferred for legitimate penological interests that

8    sought to avoid any allegation of undue influence or retaliation against correctional staff.

9    To prevail on a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish

10    that he was retaliated against for exercising a constitutional right, and that the retaliatory action

11    was not related to a legitimate penological purpose, such as preserving institutional security. *See*

12    *Barnett v. Centoni,* 31 F.3d 813, 815-16 (9th Cir. 1994).  In meeting this standard, the prisoner

13    must submit evidence establishing a specific link between the alleged retaliation and the exercise

14    of a constitutional right. *See Pratt v. Rowland,* 65 F.3d 802, 807 (9th Cir. 1995).  Thus, the

15    prisoner plaintiff must establish the following to prevail on a retaliation claim: (1) Prison

16    officials took adverse action against the inmate; (2) the adverse action was taken because the

17    inmate engaged in protected conduct; (3) the adverse action had a chilling effect on the inmate's

18    First Amendment rights; and (4) the adverse action did not serve a legitimate penological

19    purpose. *See Rhodes v. Robinson,* 408 F.3d 559, 569-70 (9th Cir. 2005).  It is the prisoner's

20    burden to establish that there was no legitimate penological purpose motivating the actions of

21    which he complains. *See Pratt,* 65 F.3d at 808.  Plaintiff cannot meet his burden because his

22    transfer from San Quentin served legitimate penological interests, in that it sought to protect

23    Plaintiff, correctional staff, and the institution itself.

24    Plaintiff's transfer from San Quentin was a precautionary measure that sought to protect

25    him and eliminate any potential allegation of wrongdoing.  Specifically, the request to transfer

26    Plaintiff to a different prison was to ensure that Defendant Lemon's role as the Chief Deputy

27    Warden had no bearing on a prior lawsuit filed by Plaintiff against him and to prevent any

28    possible allegation of perceived retaliation of any nature. (Pl.'s Compl. Ex. A at 5.)  By

Defs.' Mot. Summ. J. & Mot. Dismiss; Supp'g Mem. P. & A.          *G. Tabarez v. J. Tilton, et al.*
                                                                                    C 07-4920 JF (PR)

6

1    removing Plaintiff from San Quentin, the potential for any adverse action taken against him

2    because of the lawsuit against Defendant Lemon was eliminated.  Had Plaintiff remained at San

3    Quentin, any administrative action taken by Defendant Lemon as part of his duties as Chief

4    Deputy Warden might potentially be perceived as adversely affecting Plaintiff because of his

5    lawsuit, even if the action had nothing to do with Plaintiff.  However, once Plaintiff was

6    transferred from San Quentin, administrative acts by Defendant Lemon were ineffective against

7    Plaintiff, thereby, eliminating any potential perception that they were intended to adversely affect

8    Plaintiff.  Thus, by transferring Plaintiff, he was free to litigate his lawsuit without interference,

9    perceived or otherwise.

10          Moreover, had Plaintiff remained at San Quentin, there was the potential threat that

11   Plaintiff and other inmates may be led to believe that Plaintiff's lawsuit against Defendant

12   Lemon would cause prison officials to be less likely to enforce prison discipline to avoid

13   allegations of retaliation.  As a result, the authority of the prison officials would be undermined.

14   Once undermined, the potential for a breach in security increases and subjects correctional staff

15   and inmates to an unnecessary level of danger.  Moreover, prison officials could sense an

16   incentive act, or fail to act, because of the pending lawsuit and in an attempt to avoid an

17   allegation of retaliation.  Thus, Plaintiff was properly transferred from San Quentin because it

18   served legitimate penological interests and Defendants may not be held liable for violating

19   Plaintiff's constitutional rights.

20          Finally, Plaintiff cannot show that his transfer from San Quentin violated any policies or

21   procedures of CDCR or adversely affected him.  During the inmate-grievance process, Plaintiff

22   took his appeal to the Warden's level, complaining that he was inappropriately transferred.  (Pl.'s

23   Compl. Ex. A at 6-7.)  But, his appeal was denied because his transfer was in compliance with all

24   appropriate CDCR policies and procedures.  (*Id.*)  Further, Plaintiff has not shown that any

25   CDCR employee had acted inappropriately.  (*Id.*)  Moreover, the transfer was not adverse in

26   nature and was based on a reasonable penological interests.  (*Id.*)  There is no evidence that

27   Plaintiff suffered adversely to support his claim of retaliation because there is nothing

28   detrimental about changing prisons within CDCR.  Because Plaintiff's transfer sought to

Defs.' Mot. Summ. J. & Mot. Dismiss; Supp'g Mem. P. & A.                    *G. Tabarez v. J. Tilton, et al.*
C 07-4920 JF (PR)

7

1    eliminate any potential undue influence, was in compliance with CDCR policies and procedures,

2    and served penologaical interests, Defendants are entitled to judgment against Plaintiff.

3    **B.    Plaintiff May Not Sustain Claims Against Defendants Tilton, Ayers,**
       **Grannis, Ortiz, Ebert, Plymesser, Robinson, or Ratliff Because He**
4      **Has Failed to Show That They Were Directly Involved in His Alleged**
       **Deprivation.**

5

6         To state a claim for a constitutional violation, a plaintiff must set forth facts proximately

7    connecting the individual defendants to the loss the plaintiff claims to have suffered. *Leer v.*

8    *Murphy*, 844 F. 2d 628, 633 (9th Cir. 1988). Vague and conclusory allegations concerning

9    involvement of personnel in civil-rights violations are insufficient to survive. *Ivey v. Bd. of*

10   *Regents of the Univ. of Alaska*, 673 F. 2d 266, 268 (9th Cir. 1982). A plaintiff must establish the

11   personal involvement of each defendant in the alleged constitutional deprivation or a "causal

12   connection" between each defendant's wrongful conduct and the deprivation. *Hansen v. Black*,

13   885 F. 2d 642, 646 (9th Cir. 1978). In his complaint, Plaintiff failed to state any factual basis for

14   his allegations against Defendants. (Compl.)

15        Plaintiff cannot hold Defendants Tilton, Grannis, Ortiz, Plymesser, Robinson, Ratliff, and

16   Ebert liable because they had no personal involvement concerning Plaintiff's transfer or merely

17   classified him once he arrived at the new prison. Thus, there is insufficient evidence that each

18   personally deprived Plaintiff of his constitutional rights.

19        In his complaint, Plaintiff makes conclusory allegations that Defendants Tilton and

20   Grannis "repudiated" clearly established CDCR rules when his inmate appeal concerning his

21   transfer was denied. (Pl.'s Compl. ¶ 11.) But, Plaintiff has identified no personal act by them in

22   support of his claim that they denied him his constitutional right, and there is no evidence of any

23   such act or that they were involved at all. Thus, Defendants Tilton and Grannis are entitled to

24   judgment against Plaintiff because there is no evidence that each personally deprived him of any

25   constitutional right.

26        Further, Defendants Plymesser, Robinson, and Ratliff had no authority or responsibility to

27   recommend Plaintiff be transferred back to San Quentin or prevent his transfer to CTF. (Decl.

28   Plymesser ¶ 5.) They served in a very limited role. Defendants Plymesser, Robinson, and Ratliff

Defs.' Mot. Summ. J. & Mot. Dismiss; Supp'g Mem. P. & A.          *G. Tabarez v. J. Tilton, et al.*
                                                                   C 07-4920 JF (PR)

1   served on the UCC committee at CTF after Plaintiff was transferred from San Quentin. (*Id.* ¶ 3.)

2   Plaintiff's appearance before the UCC at CTF was for a limited purpose. (*Id.* ¶ 4.) One purpose

3   was to ensure that procedural requirements were met for Plaintiff to be transferred to CTF. (*Id.* ¶

4   5.) Defendant Plymesser confirmed that procedural requirements were satisfied by confirming

5   that Plaintiff had received an endorsement from a Classification Staff Representative on

6   December 4, 2006. (*Id.*) Once confirmed, Defendants Plymesser, Robinson, and Ratliff had no

7   authority or responsibility to investigate or question Plaintiff's transfer to CTF. (*Id.*) Thus,

8   Defendants Plymesser, Robinson, and Ratliff did not transfer Plaintiff to CTF and may not be

9   held constitutionally liable for it.

10          Finally, although Defendant Ebert served on the UCC at San Quentin, she did not have

11   the authority to prevent Plaintiff's transfer to CTF. At the UCC, Defendant Ebert's duties

12   required her to record the most pertinent information and to prepare a document, a CDC 128-G,

13   following the hearing. (Decl. Ebert ¶ 3.) She did not have the authority or responsibility to reject

14   or prevent Plaintiff's transfer from San Quentin. (*Id.* ¶ 8.) Accordingly, Defendant Ebert may

15   not be held liable.

16          **III.    Defendants Tilton, Ayers, Grannis, and Ortiz May Not Be Held Liable for
                   Denying Plaintiff's Grievances Because Inmates Do Not Have a**

17          **Constitutional Right to the Administrative-Appeals Process.**

18          Inmates do not have a constitutional right to file prisoner administrative appeals or inmate

19   grievances. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) A prison grievance procedure

20   is a procedural right only, and it does not confer any substantive right upon the inmates. *Buckley*

21   *v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Federal Rule of Civil Procedure 12(b)(6) provides

22   the means to dispose of a claim against a defendant solely based on the denial of an inmate's

23   appeal. A dismissal under Rule 12(b)(6) is proper when there is either a "lack of cognizable

24   legal theory" or "the absence of specific facts alleged under a cognizable legal theory." *Id.* at

25   699. Where there are no facts that show the violation of a federally protected right, defendants

26   are entitled to prevail as a matter of law. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979).

27          Plaintiff alleges in his complaint that he sustained a constitutional violation because his

28   inmate appeal was denied at various stages. For example, he contends that Defendants Tilton

Defs.' Mot. Summ. J. & Mot. Dismiss; Supp'g Mem. P. & A.                    *G. Tabarez v. J. Tilton, et al.*
                                                                          C 07-4920 JF (PR)

1  and Grannis "repudiated" clearly established CDCR rules by denying his inmate appeal. (Pl.'s

2  Compl. ¶ 11.) But, nowhere does he state the basis for this contention. Conversely, the

3  Director's Level Appeal Decision clearly states that Plaintiff's appeal concerning his transfer was

4  denied because the precautionary transfer was taken to ensure that Plaintiff's constitutional rights

5  were maintained and that the transfer was meant to protect, not harm, Plaintiff. (Pl.'s Compl. Ex.

6  A.) Moreover, Defendant Ayers denied Plaintiff's inmate appeal (Log No. SQ 07-718) grieving

7  his transfer from San Quentin. (Pl.'s Compl. Ex. A at 6-7.) Nowhere in his complaint, does

8  Plaintiff provide the necessary evidence to show how this denial denied him his constitutional

9  rights.

10  Finally, as to Defendant Ortiz, Plaintiff has failed to proffer any evidence in support of

11  his broad allegations. Plaintiff merely attaches a response to Plaintiff's inmate appeal signed by

12  Defendant Ortiz. (*Id.* Ex. B.) This shows that Defendant Ortiz's only interaction with Plaintiff

13  was when Defendant Ortiz prepared a second level response to Plaintiff's inmate appeal (Log

14  No. CTF-N 06-04251) dated February 28, 2007. (*Id.*, Pl.'s Compl. Ex. E.) But the inmate appeal

15  that Defendant Ortiz responded to did not deal with Plaintiff's transfer from San Quentin. (*Id.*)

16  It merely dealt with Plaintiff's complaint that he was not receiving adequate privileges and had

17  not been given a job assignment. (*Id.*) In fact, Defendant Ortiz was not even working at CTF in

18  December 2006. (Decl. Ortiz ¶ 2.) Moreover, Defendant Ortiz is not familiar with Defendant

19  Lemon and did not know that Plaintiff had filed a previous lawsuit against Defendant Lemon.

20  (*Id.* ¶ 4.) In sum, Defendant Ortiz had no involvement with Plaintiff's transfer from San

21  Quentin. (*Id.* ¶¶ 2, 4.) As such, Defendant Ortiz may not be held liable because he was

22  employed at CTF and had no responsibility or authority to prevent his transfer to CTF.

23  Accordingly, Plaintiff may not sustain this action against these Defendants because of

24  their actions during the appeals process. In the absence of any evidence of wrongdoing, these

25  Defendants may not be held liable for their actions taken as part of the appeals process and must

26  be dismissed under Federal Rule of Civil Procedure 12(b)(6).

27  / / /

28  / / /

Defs.' Mot. Summ. J. & Mot. Dismiss; Supp'g Mem. P. & A.                    *G. Tabarez v. J. Tilton, et al.*
C 07-4920 JF (PR)

10

1    **IV.    Even If the Court Were to Find a Constitutional Violation, Defendants Are Entitled to Qualified Immunity Because a Reasonable Officer Could Have Believed that Defendants' Conduct Was Lawful.**

3        Qualified immunity shields an official from civil-damages liability unless his conduct

4    violated clearly established law, of which a reasonable official would have known. *Harlow v.*

5    *Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, it gives officials "ample room for mistaken

6    judgments by protecting all but the plainly incompetent or those who knowingly violate the law."

7    *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotes and citation omitted). Constitutional

8    requirements are not always clear-cut at the time that action is required by officials. *Saucier v.*

9    *Katz*, 533 U.S. 194, 205–06 (2001). But qualified immunity ensures that officials are on notice

10    that their conduct is unlawful before they are subjected to suit. *Id.* It therefore prevents officials

11    from being distracted from their governmental duties or inhibited from taking necessary

12    discretionary action. *Harlow*, 457 U.S. at 816. It also prevents "deterrence of able people from

13    public service." *Id.* And in reference to prisons, it allows officials to utilize their

14    expertise—based on years of observation and practice—to maintain order without fear of liability

15    for doing what seemed "reasonable" at the time. *See Jeffers v. Gomez*, 267 F.3d 895, 917 (9th

16    Cir. 2001).

17        In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a particular

18    sequence of questions to be considered in determining whether qualified immunity exists. A

19    court must first consider this threshold question: "Taken in the light most favorable to the party

20    asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

21    right?" *Id.* at 201. If no constitutional right was violated, the inquiry ends and defendants

22    prevail. *Id.* at 204. If, however, "a violation could be made out on a favorable view of the

23    parties' submissions, the next, sequential step is to ask whether the right was clearly established."

24    *Id.* at 201-02. "The contours of the right must be sufficiently clear that a reasonable official

25    would understand that what he is doing violates that right." *Id.* The Supreme Court also held

26    that the goal of qualified immunity would be undermined if a court denied summary judgment

27    each time a material issue of fact remains on a claim. *Saucier*, 533 U.S. at 202.

28        As detailed above, the evidence does not show that Defendants violated Plaintiff's

Defs.' Mot. Summ. J. & Mot. Dismiss; Supp'g Mem. P. & A.    *G. Tabarez v. J. Tilton, et al.*
C 07-4920 JF (PR)

1   constitutional rights. But, if the Court were to find such a violation, Defendants would still be

2   entitled to qualified immunity because the law in effect at the time did not show that Defendants'

3   actions were clearly unlawful. First, Plaintiff has no constitutional right to his prison of choice.

4   *Montanye v. Haymes*, 427 U.S. 236, 243 (1976). Second, correctional officers have been granted

5   qualified immunity for their decision to transfer a prisoner to preserve internal order and

6   discipline and to maintain internal security. *Schroeder v. McDonald*, 55 F.3d 454, 461-62 (9th

7   Cir. 1995). Thus, even if Plaintiff choice was to remain at San Quentin, that alone would not be

8   enough to prevent a transfer. As detailed above, Plaintiff was transferred to ensure that any

9   potential for adverse action against him because of a lawsuit he had filed was eliminated. (Pl.'s

10  Compl. Ex. A at 5.) Additionally, he was transferred as a means to avoid any perception that

11  prison authorities' potential adverse actions against him were because of a pending lawsuit. (*Id.*)

12  Additionally, Defendants involved in Plaintiff's administrative appeal would not have known

13  that by denying his inmate appeal, they were violating his constitutional rights. Thus, for these

14  reasons, a reasonable officer could believe that Defendants were not violating Plaintiff's

15  constitutional rights. Accordingly, Defendants are entitled to qualified immunity.

16                                    **CONCLUSION**

17          For the reasons stated above, the undisputed evidence shows that Defendants did not

18  retaliate against Plaintiff in violation of his constitutional rights. Even if Plaintiff were to show

19  that there was a triable issue of fact that a constitutional violation had occurred, Defendants

20  would still be entitled to qualified immunity because no reasonable officer would have believed

21  that transferring Plaintiff to another prison would have resulted in a violation his constitutional

22  rights. Further, Plaintiff has failed to show that Defendants Tilton, Grannis, Plymesser,

23  Robinson, Ratliff, or Ebert personally deprived him of his constitutional rights. Finally,

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

Defs.' Mot. Summ. J. & Mot. Dismiss; Supp'g Mem. P. & A.                    *G. Tabarez v. J. Tilton, et al.*
                                                                            C 07-4920 JF (PR)

1    Defendants Tilton, Grannis, Ayers, and Ortiz should be dismissed from this lawsuit because there

2    is no constitutional right to an administrative appeals process.

3            Dated:  June _5_, 2008

4                            Respectfully submitted,

5                            EDMUND G. BROWN JR.
                             Attorney General of the State of California

6                            DAVID S. CHANEY
                             Chief Assistant Attorney General

7                            FRANCES T. GRUNDER
                             Senior Assistant Attorney General
8

9                            THOMAS S. PATTERSON
                             Supervising Deputy Attorney General

10

11                           _Trace Maiorino_

12

13                           TRACE O. MAIORINO
                             Deputy Attorney General
                             Attorneys for Defendants Lemon, Ayers, Tilton, Ebert, Ortiz,
14                           Plymesser, Robinson, Ratliff, and Grannis

15

16    20115168.wpd
      SF2008400989

17

18

19

20

21

22

23

24

25

26

27

28

Defs.' Mot. Summ. J. & Mot. Dismiss; Supp'g Mem. P. & A.                    *G. Tabarez v. J. Tilton, et al.*
                                                                              C 07-4920 JF (PR)