1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  THOMAS S. PATTERSON
   Supervising Deputy Attorney General
5  TRACE O. MAIORINO, State Bar No. 179749
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone: (415) 703-5975
     Fax: (415) 703-5843
8    Email: Trace.Maiorino@doj.ca.gov

9  Attorneys for Defendants Lemon, Ayers, Tilton, Ebert,
   Ortiz, Plymesser, Robinson, Ratliff, and Grannis
10

11

12                  IN THE UNITED STATES DISTRICT COURT

13              FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                          SAN JOSE DIVISION

15  | **GREGORY TABAREZ,** | C 07-4920 JF |
16  | Plaintiff, | **DECLARATION OF DEFENDANT C.** |
17  | v. | **PLYMESSER IN SUPPORT OF DEFENDANTS' MOTION** |
18  | **JAMES TILTON, et al.,** | **FOR SUMMARY JUDGMENT** |
19  | Defendants. | |
20

21       I, C. Plymesser, declare the following:

22       1.    I have been employed by the California Department of Corrections and Rehabilitation

23  (CDCR) since March 1980. I have been assigned to the Correctional Training Facility (CTF)

24  since 1996. I currently serve in the capacity of Correctional Counselor II.

25       2.    I have reviewed Plaintiff's complaint filed in this lawsuit and the attached exhibits.

26       3.    On December 20, 2006, Plaintiff appeared before the Unit Classification Committee

27  (UCC) for an initial hearing following his transfer from California State Prison - San Quentin

28  (San Quentin). A UCC is typically chaired by the facility captain. The facility captain was not

Decl. Def. Plymesser Supp. Defs.' Mot. Summ. J.                    *G. Tabarez v. J. Tilton, et al.*
                                                                              C 07-4920 JF

                                      1

1    present on December 20, 2006.  Thus, I served as the acting-captain.  As the acting-captain, I had

2    the authority to chair the UCC hearing.  The UCC consisted of myself, Defendant Robinson, and

3    Defendant Ratliff.  Both Defendant Robinson and Defendant Ratliff held a lower rank than

4    myself at the UCC hearing.

5        4.    As a recent transfer to CTF, Plaintiff appeared before the UCC on December 20, 2006

6    for a limited purpose.  Plaintiff appeared before the UCC to ensure that he was properly

7    transferred to CTF from San Quentin, that he was properly housed at CTF's North Facility, that

8    he was placed in the appropriate work-group and privilege-group, and to ensure that he was

9    placed on the waiting list for an appropriate program at CTF.

10        5.    To determine whether Plaintiff was properly transferred to CTF, I confirmed that he

11    had been endorsed for transfer by a Classification Staff Representative (CSR).  According to a

12    December 4, 2006 CDC 128-G, Plaintiff was endorsed for transfer to CTF-II by a CSR named K.

13    Ligon.  Thus, he was properly endorsed to be transferred to CTF and not another prison facility.

14    I did not have the authority or responsibility to investigate or question the reasons behind the

15    endorsement by the CSR.  Neither Defendant Robinson or Defendant Ratliff had the authority or

16    responsibility to investigate or question the reasons behind the endorsement by the CSR.

17    Accordingly, the December 20, 2006 UCC did not have the authority to recommend that Plaintiff

18    be returned to San Quentin.

19        6.    If Plaintiff was dissatisfied with his transfer to CTF, he had available remedies.  The

20    proper venue for his grievance was the inmate appeals process.  It would not have been

21    appropriate for me to consider his grievance at the December 20, 2006 UCC.  Moreover, I did not

22    have the authority to do so.

23        7.    CTF is a multi-level facility comprised of Central, South, and North facilities and

24    housing Level I, II, and III inmates.  The classification score of an inmate determines the

25    inmates' housing level.  I understand that Plaintiff's classification score in December 2006 was

26    nineteen points.  Thus, Plaintiff was a Level II inmate.

27        8.    I further understand that Plaintiff was housed at CTF-North Facility (CTF-North).

28    CTF-North houses approximately 2,600 inmates.  In December 2006 CTF-North housed Level I,

Decl. Def. Plymesser Supp. Defs.' Mot. Summ. J.                    *G. Tabarez v. J. Tilton, et al.*
C 07-4920 JF

1    II, and III inmates. In accordance with institutional procedure, Operational Procedure No. 80,

2    CTF-North is a multi-level facility, housing Level II and Level III inmates. In accordance with

3    CCR 3375.1(b) Level I inmates may be housed temporarily at CTF-North facility, pending bed

4    availability at CTF-South facility, a designated Level I housing facility.

5        9.   I am familiar with Defendant Lemon. I worked at Folsom State Prison (Folsom) from

6    1990 to 1996. At some time before I left Folsom, Defendant Lemon became the Associate

7    Warden at Folsom. As a Correctional Counselor I, Defendant Lemon was not my immediate

8    supervisor. However, I did have limited contact with him throughout the course of my duties. I

9    was not aware that Plaintiff had filed a lawsuit against Defendant Lemon related to a 2002

10    incident at Folsom until Plaintiff told me at the December 20, 2006 UCC hearing.

11       10.   This declaration is based on personal knowledge, except where indicated to be based

12    on information and belief. As to those matters, I believe them to be true.

13      I declare under penalty of perjury that the foregoing is true and correct of my own

14    knowledge.

15       Executed on June _2_, 2008 at Soledad, California.

C. PLYMESSER

Decl. Def. Plymesser Supp. Defs.' Mot. Summ, J.

*G. Tabarez v. J. Tilton, et al.*
C 07-4920 JF

3