NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY TABAREZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JAMES TILTON, et al., ) <br> ) <br> Defendants. ) <br> ———————————————————— ) | No. C 07-04920 JF (PR) <br><br> ORDER GRANTING MOTION <br> FOR SUMMARY JUDGMENT <br><br><br><br> (Docket No. 36) |

Plaintiff, a state prisoner proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against California state prison officials. The Court found the complaint, when liberally construed, stated a cognizable claim that the named Defendants violated his First Amendment rights by retaliating against him for the exercise of his constitutional rights. Defendants filed a motion for summary judgment on the grounds that (1) Defendants did not violate Plaintiff's First Amendment rights, and (2) Defendants are entitled to qualified immunity. Defendants also filed a motion to dismiss on the grounds that Plaintiff failed to set forth facts in support of his claim. Plaintiff filed opposition to Defendant's summary judgment motion, and Defendant filed a reply. After reviewing the first amended complaint and all submitted papers, the Court concludes that

Defendants are entitled to summary judgment and will GRANT Defendants' motion.

## DISCUSSION

### I.   Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is 'no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this

P:\PRO-SE\SJ.JF\CR.07\Tabarez920_grant-msj.wpd

2

showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028-29 (9th Cir. 2001).

## II.    Legal Claims and Analysis

Plaintiff claims that he was wrongfully transferred because of a lawsuit filed against Defendant Lemon related to a 2002 incident at Folsom State Prison. (Compl. 9.) Near or about November 2006, Defendant Lemon became a warden at San Quentin State Prison ("SQSP") where Plaintiff was incarcerated. Plaintiff was transferred the following month to the Correctional Training Facility - Soledad ("CTF"). Plaintiff claims that the transfer was in retaliation for his lawsuit against Defendant Lemon. Plaintiff claims that the transfer has had an adverse affect on him, resulting in a chilling effect of the exercise of his constitutional rights.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Accord Pratt v. Rowland, 65 F.3d 802, 806

1  (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege
2  that he was retaliated against for exercising his constitutional rights and that the
3  retaliatory action did not advance legitimate penological goals, such as preserving
4  institutional order and discipline); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994)
5  (per curiam) (same); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985) (contention that
6  actions "arbitrary and capricious" sufficient to allege retaliation).

7        A prisoner must at least allege that he suffered harm, since harm that is more than
8  minimal will almost always have a chilling effect. Rhodes, 408 F.3d at 567-68 n.11; see
9  Gomez v. Vernon, 255 F.3d 1118, 1127-28 (9th Cir. 2001) (prisoner alleged injury by
10 claiming he had to quit his law library job in the face of repeated threats by defendants to
11 transfer him because of his complaints about the administration of the library); Resnick v.
12 Hayes, 213 F.3d 443, 449 (9th Cir. 2000) (holding that a retaliation claim is not
13 actionable unless there is an allegation of harm). The prisoner need not demonstrate a
14 total chilling of his First Amendment rights in order to establish a retaliation claim. See
15 Rhodes, 408 F.3d at 568-69 (rejecting argument that inmate did not state a claim for relief
16 because he had been able to file inmate grievances and a lawsuit). That a prisoner's First
17 Amendment rights were chilled, though not necessarily silenced, is enough. Id. at 569
18 (destruction of inmate's property and assaults on the inmate enough to chill inmate's First
19 Amendment rights and state retaliation claim, even if inmate filed grievances and a
20 lawsuit).

21       The prisoner must show that the type of activity he was engaged in was
22 constitutionally protected, that the protected conduct was a substantial or motivating factor
23 for the alleged retaliatory action, and that the retaliatory action advanced no legitimate
24 penological interest. Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring
25 retaliatory motive from circumstantial evidence). Retaliatory motive may be shown by the
26 timing of the allegedly-retaliatory act and inconsistency with previous actions, as well as
27 direct evidence. Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003).
28       The prisoner bears the burden of pleading and proving absence of legitimate

1  correctional goals for the conduct of which he complains.  <u>Pratt</u>, 65 F.3d at 806.  At that
2  point, the burden shifts to the prison official to show, by a preponderance of the evidence,
3  that the retaliatory action was narrowly tailored to serve a legitimate penological purpose.
4  <u>See</u> <u>Schroeder v. McDonald</u>, 55 F.3d 454, 461-62 (9th Cir. 1995) (defendants had
5  qualified immunity for their decision to transfer prisoner to preserve internal order and
6  discipline and maintain institutional security).

7    Defendants contend that Plaintiff fails to meet his burden because he cannot show
8  that the transfer from SQSP did not serve a legitimate penological interest, which is the
9  fifth element necessary to state a retaliation claim.  <u>See</u> <u>Rhodes</u>, 408 F.3d at 567-68.
10 Defendants do not dispute that Plaintiff's transfer from SQSP was at the request of
11 Defendant Lemon as Chief Deputy Warden to SQSP.  However, Defendants argue that the
12 transfer served a legitimate penological purpose, *i.e.*, "to ensure that Defendant Lemon's
13 role as the Chief Deputy Warden had no bearing on a prior lawsuit filed by Plaintiff
14 against him and to prevent any possible allegation of perceived retaliation of any nature"
15 and that removing Plaintiff from SQSP eliminated the potential for any adverse action
16 taken against Plaintiff because of the lawsuit.  (Defs.' Mot. at 6-7.)  Defendants contend
17 that any administrative action taken by Defendant Lemon as part of his duties as Chief
18 Deputy Warden might potentially be perceived as adversely affecting Plaintiff because of
19 the lawsuit, even if the action had nothing to do with Plaintiff.  (<u>Id.</u> at 7.)  By transferring
20 Plaintiff, Defendant argue that he was free to litigate his lawsuit without interference.  (<u>Id.</u>)
21

22   Defendants also contend that had Plaintiff remained at SQSP, "there was the
23 potential threat that Plaintiff and other inmates may be led to believe that Plaintiff's
24 lawsuit against Defendant Lemon would cause prison officials to be less likely to enforce
25 prison discipline to avoid allegations of retaliation."  (<u>Id.</u>)  The result would be that the
26 prison officials' authority would be undermined, leading to an increase in the potential for
27 a breach in security and subjecting correctional staff and inmates to an unnecessary level
28 of danger.  (<u>Id.</u>)  Defendants also contend that prison officials might be influenced to act,

or fail to act because of the pending lawsuit in an attempt to avoid an allegation of retaliation. (Id.)

Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Id. (quoting Sandin, 515 U.S. at 482). Such deference is warranted here, where Defendants have shown that transferring Plaintiff to another prison was a narrowly tailored means to serve a legitimate penological purpose, *i.e.*, to maintain authority and prison order and security. See Schroeder, 55 F.3d at 461-62.

Plaintiff argues in opposition that the transfer was nonetheless inappropriate and adverse because the environment at CTF is more violent, there are frequent lock-downs, and there are no job opportunities. (Oppo. at 9-10.) However, Defendants have submitted the declarations of Defendants B. Ebert and C. Plymesser in support of their argument that the transfer was non-adverse in nature and that Plaintiff was transferred to an appropriate facility consistent with his classification score. (See Ebert Decl. at 2; Plymesser Decl. at 2-3.) Plaintiff has a score of nineteen points which makes him a Level II inmate, and his sentence of twenty-eight-years-to-life classifies him as a Close-B inmate. CTF is one of the few institutions that houses Level II inmates with a Close-B custody status. (Id.) Furthermore, Plaintiff retained his Work Group/Privilege Group status ("A1/A") upon transfer. (Defs.' Mot., Ex. A.) Furthermore, there is no evidence that the "adverse" conditions which Plaintiff complains of were other than incidental to the transfer rather than directly caused in retaliation by Defendants.

Having reviewed the pleadings and all submitted papers on this matter, the Court finds that Plaintiff's allegations do not establish that Defendants acted in retaliation when they transferred Plaintiff to CTF. Accordingly, Defendants are entitled to judgment on

this claim as a matter of law. See Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).[1]

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment (Docket No. 36) is GRANTED.

IT IS SO ORDERED.

DATED: 3/23/09

JEREMY FOGEL
United States District Judge

---

[1] Because the Court finds that no constitutional violation occurred, it is not necessary to reach Defendants' qualified immunity argument or motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).